IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01560-MEH

MALIBU MEDIA, LLC,

    Plaintiff,

v.

JASON LOWRY,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [filed September 24, 2013; docket #22]. The motion is fully briefed and the Court concludes that oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court **DENIES** Defendant's motion.

**I.**      **BitTorrent Protocol**

Defendant Jason Lowry seeks to dismiss this case by pointing to certain aspects of the process used to download a copyrighted work through the BitTorrent program; accordingly, this Court finds it necessary to explain how BitTorrent works. Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first

defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.
>
> *BitTorrent:* A peer-to-peer file sharing protocol.
>
> *Peer:* A BitTorrent user.
>
> *Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).
>
> *Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.
>
> *Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.
>
> *Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.
>
> *Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

> *Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.
>
> *Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to describe the protocol and how BitTorrent works:

> BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."
>
> . . .
>
> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
> Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).
>
> BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
> "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."

> In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:
>
> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).

## II.   Case Background

### A.   Factual Allegations

The following are factual allegations made by Plaintiff in the operative Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In this case, Plaintiff Malibu Media, LLC alleges that Defendant Jason Lowry infringed on Plaintiff's copyrighted work by using the internet and a "BitTorrent" protocol to reproduce, distribute, display, or perform Plaintiff's protected motion pictures. Specifically, Plaintiff alleges its investigator, IPP Limited, established a direct connection with IP address 98.245.106.243, which has been identified by the applicable Internet Service Provider (ISP) as belonging to Defendant Lowry.  IPP Limited downloaded from Lowry one or more bits of each of the digital movie files identified by file hashes as follows:

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 04/18/2013 04:22:15 | 59852FEEF2BE62F63BE7929F153EC545884604A7 | Old Enough to Know Better |
| 04/17/2013 22:04:07 | 42E971103CB6F4DF101C8982D0E122F5755324A0 | Rose Petals |
| 03/11/2013 18:43:05 | 9ED24C0BD89D55DD7265A2AFD874420A1516FA75 | Spilled Milk |

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 03/11/2013 17:30:11 | 1AC23122A8B10AFE4F7CEF1B6746428096E0B9E4 | Tuesday Morning |
| 03/11/2013 15:58:43 | 3EC7BA689B073ABCDAFD0FBB6D44CD62829E6882 | Red Satin |
| 01/24/2013 01:30:41 | F51D1A65DBBD7024DCB91B135876B725A61473A7 | Lovers in Paradise |
| 01/24/2013 01:23:25 | E27EB12D3C894D4D6A2A0653FD4D2C58D5EE2D31 | Girls Night Out |
| 01/24/2013 01:19:34 | 9296414309649655B35F935AF4C750C1AFD56E26 | Formidable Beauty |
| 01/24/2013 01:00:45 | A679F2D2D24787C5B384F543ED7C7919638B3BFC | Vacation Fantasy |
| 01/24/2013 00:41:27 | 5CD20FA4A34CE40E898CEEC6137FE7AE3E2ED6BC | Inside Perfection |
| 01/24/2013 00:11:34 | CD4D05FD81EB6EE341895FB3FB26575371FAFE1C | Romantic Memories |
| 01/24/2013 00:10:29 | 2BE9E830AED6FC2644E2F7221BD1304604D653FA | Morning Fantasy |
| 01/24/2013 00:06:59 | 149B621A7854AD4251012BDA94681F3C21D72DE8 | Unbelievably Beautiful |
| 01/23/2013 23:13:18 | 54BBEB2E485E8FA60FED3C4503A772B3BB18DE65 | A Day to Remember |
| 01/23/2013 23:10:17 | C9255BEF6851F39C0879F3C65DC851CE9ADCA38F | Like The First Time |
| 01/23/2013 23:04:48 | FDA166688F0C01B464E716460F22A96E7D40A27C | Veronika Coming Home |
| 01/23/2013 07:51:44 | EF962ECC5267B3E8C88D9C611FC159F4A4D97EF8 | Lunchtime Fantasy |
| 01/23/2013 07:51:44 | 1E1888B4C8CAAD426E92FC980B348E8C8A89520B | Wet Dream |
| 01/23/2013 07:51:19 | 5D078FC4F665E7B3E7D80C47845956542379750F | Transcendence |
| 01/23/2013 07:46:16 | 1F04F4F26D4D458B257D7A8FC53E6C2B2E557A58 | The Foursome |
| 01/23/2013 07:29:12 | 941949F8F0D4F6A03E23515626AA08A9BEC0AF61 | Backstage |
| 01/23/2013 06:56:10 | 71679AC10279FF767D09C054173F8FFCFB5D0F25 | Connie True Love |
| 01/23/2013 06:36:05 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | MaryJane Young Love |
| 01/23/2013 05:32:57 | 61E5F8C070E519FC15094741222ADE084E82A935 | Three for the Show |
| 01/23/2013 05:01:05 | 4A622B71B110182141006BC6B22D53643977DFFC | Just Married |

Exhibit A to Amended Complaint, docket #17-1. The most recent connection between IPP and Lowry's IP address for each file hash listed above is included within the column labeled Hit Date UTC. UTC refers to Universal Time which is utilized for air traffic control as well as computer forensic purposes. Each of the cryptographic file hashes as set forth above correlates to copyrighted movies owned by Plaintiff as identified here:

| Title | Registration Number | Date of First Publication | Registration Date |
|---|---|---|---|

5

| Title | Registration | Creation | Publication |
|---|---|---|---|
| A Day to Remember | PA0001811850 | 10/22/2012 | 10/26/2012 |
| Backstage | PA0001797943 | 07/17/2012 | 07/18/2012 |
| Connie True Love | PA0001775903 | 02/08/2012 | 02/17/2012 |
| Formidable Beauty | PA0001814785 | 11/17/2012 | 11/19/2012 |
| Girls Night Out | PA0001762409 | 11/14/2011 | 11/23/2011 |
| Inside Perfection | PA0001817756 | 12/02/2012 | 12/16/2012 |
| Just Married | PA0001780472 | 07/06/2011 | 03/10/2012 |
| Like The First Time | PA0001778844 | 02/29/2012 | 02/29/2012 |
| Lovers in Paradise | PA0001780463 | 12/30/2011 | 03/10/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 |
| MaryJane Young Love | PA0001762404 | 08/15/2011 | 11/23/2011 |
| Morning Fantasy | PA0001780474 | 01/18/2012 | 03/10/2012 |
| Old Enough to Know Better | PA0001838597 | 04/15/2013 | 04/28/2013 |
| Red Satin | PA0001828892 | 03/06/2013 | 03/12/2013 |
| Romantic Memories | PA0001790375 | 05/16/2012 | 05/16/2012 |
| Rose Petals | PA0001838598 | 04/17/2013 | 04/28/2013 |
| Spilled Milk | PA0001833299 | 03/08/2013 | 04/01/2013 |
| The Foursome | PA0001780470 | 09/15/2011 | 03/10/2012 |
| Three for the Show | PA0001808630 | 09/24/2012 | 09/28/2012 |
| Transcendence | PA0001799577 | 07/30/2012 | 07/31/2012 |
| Tuesday Morning | PA0001828897 | 02/26/2013 | 03/12/2013 |
| Unbelievably Beautiful | PA0001805315 | 08/24/2012 | 09/10/2012 |
| Vacation Fantasy | PA0001814250 | 11/10/2012 | 11/28/2012 |
| Veronika Coming Home | PA0001774761 | 01/25/2012 | 02/03/2012 |
| Wet Dream | PA0001800357 | 07/20/2012 | 07/20/2012 |

Exhibit B to Amended Complaint, docket #17-2. Plaintiff alleges IPP Limited downloaded from Lowry one or more bits of each file, and further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash

matched what is listed above. IPP Limited then verified that the digital media file correlating to each file hash listed above contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash.

Plaintiff alleges this process indicates that Lowry downloaded and uploaded Plaintiff's copyrighted works without authorization or payment. Plaintiff claims that, as the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, Lowry is the most likely infringer.

B.   Procedural History

Plaintiff initiated this action on June 14, 2013, against a Doe Defendant identified only by an IP address. In an effort to identify the alleged infringer, Plaintiff requested permission from the Court to serve limited, immediate discovery on the Doe Defendant's ISP prior to the Rule 26(f) conference. (Docket #7.) The Court determined that Plaintiff had shown good cause for limited expedited discovery, and granted Plaintiff's motion in part. (Docket #10.) In particular, the Court authorized Plaintiff to serve a third party subpoena pursuant to Fed. R. Civ. P. 45 on the identified ISP for the limited purpose of ascertaining the identity of the Doe Defendant as reflected by the IP address listed on docket #1-1. The Court directed that the subpoena be limited to providing Plaintiff with the name, address, telephone number, email address, and Media Access Control address of the Defendant to whom the ISP has assigned an IP address. With the subpoena, the Court directed Plaintiff also to serve a copy of its order. Finally, the Court emphasized that Plaintiff was only permitted to use the information disclosed in response to the subpoenas for the purpose of protecting and enforcing its rights as set forth in its Complaint. The Court cautioned Plaintiff that improper use of this information would result in sanctions.

Apparently, the Doe Defendant received notice of the subpoena and moved to quash it on August 6, 2013. Docket #13. The Court denied the motion not merely for procedural deficiencies, but also on its merits. Docket #15. Thereafter, once Plaintiff received the identifying information from the ISP, it filed the operative Amended Complaint naming Defendant Lowry. Docket #17.

Lowry filed the present motion on September 24, 2013 arguing that the Amended Complaint fails to state a claim for relief because it alleges merely that Lowry is the "most likely infringer" of the copyrighted works. That is, Lowry contends Plaintiff fails to plead facts sufficient to allow the Court to draw the inference that Lowry is liable for the alleged infringement of the 25 copyrighted works. According to Lowry, Plaintiff's pleading consists of conclusory statements arranged to support a speculation that Lowry *may* have infringed the works, and is supported only by a "boilerplate" declaration that is both factually inaccurate and misleading. Plaintiff responds that its operative pleading states sufficient facts supporting a plausible copyright infringement claim pursuant to *Iqbal* and its progeny. Moreover, Plaintiff asserts that it has been challenged under Rule 12(b)(6) in other cases and, each time, the Court has denied the motion to dismiss. Plaintiff contends that its facts are specific to demonstrate that Lowry used the BitTorrent protocol to download its copyrighted movies without authorization or payment.

Although provided the opportunity to do so, Lowry did not file a reply brief in support of his motion within the time period governed by D.C. Colo. LCivR 7.1C.

### III.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to

dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires

9

the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

**IV.    Analysis**

"There are two elements to a copyright infringement claim: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The plaintiff bears the burden of proof on both elements." *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, the Plaintiff alleges it owns the copyrights to each of the works (films) listed above, and provides the registration number, publication date and registration date for each such film. *See supra*; *see also* Exhibit B to Amended Complaint, docket #14-2. The Court takes Plaintiff's well-pleaded allegations as true for purposes of this Rule 12(b)(6) analysis.

For the second element, Plaintiff must sufficiently allege that Lowry "unlawfully appropriated protected portions of the copyrighted work." *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that Lowry, as a factual matter, copied portions of Plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).

"[A] plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir. 2007)).

"Once copying has been established, 'liability for copyright infringement will attach only where protected elements of a copyrighted work are copied.'" *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* "Substantial similarity is measured by whether an 'ordinary observer,' who is not specifically looking for disparities, would tend to overlook any differences between the works." *Id.*

In this case, Plaintiff has sufficiently alleged that Lowry copied its protected works by asserting that its investigator was able to download from Lowry's IP address one or more bits of each of the digital movie files identified by file hashes, then downloaded a full copy of each file hash from the BitTorrent file distribution network (accessed by Lowry) and confirmed through independent calculation that the file hash matched the Plaintiff's copyrighted works. Plaintiff

11

alleges its investigator then verified that the digital media file correlating to each file hash contained a copy of a movie which is identical, strikingly similar or substantially similar to the movie associated with that file hash. Taking these well-pled allegations as true, the Court finds that Plaintiff has plausibly alleged Defendant Lowry copied Plaintiff's copyright protected works without authorization or payment in violation of the Copyright Act. *See Patrick Collins, Inc. v. John Doe 1*, -- F. Supp. 2d --, 2013 WL 2177787, at *7 (E.D.N.Y. May 18, 2013) ("the Plaintiff has adequately pled a plausible claim of copyright infringement by providing sufficient detail as to the acts the [ ] Defendant took in infringing the copyright, including going to a torrent site; participating in a swarm; and copying a piece of the copyrighted work identified by a unique hash number."). As to whether Lowry *actually* performed the alleged conduct, that is a matter for summary judgment or trial, as appropriate.

**V.     Conclusion**

For the reasons stated above, the Court finds that Defendant Jason Lowry has not met his burden to show Plaintiff fails to state a claim for relief at this stage of the litigation. Therefore, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [filed September 24, 2013; docket #22].

Dated at Denver, Colorado, this 14th day of November, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge